UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ALICIA WARD,

    Plaintiff,

v.                                                   Case No. 3:18-cv-1529-J-MAP

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

## **ORDER**

This is an appeal of the administrative denial of supplemental security income (SSI) and disability insurance benefits (DIB).[1] *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Plaintiff argues that her case should be remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g), because the Administrative Law Judge (ALJ) failed to fully develop the administrative record and erred in his determination of Plaintiff's residual functional capacity (RFC). Plaintiff also contends the Appeals Council (AC) erred by denying review of the ALJ's decision. After considering Plaintiff's arguments (doc. 19, 22), Defendant's response (doc. 21), and the administrative record (doc. 11), I find the Commissioner's decision is supported by substantial evidence. I affirm.

    *A. Background*

Plaintiff Alicia Ward was 38 years old on her alleged disability onset date of August 28, 2013. (R. 45) She has a tenth-grade education and past work experience as a kitchen manager, warehouse worker, driver, housekeeper, and hairstylist. (*Id.*) Based on Plaintiff's earnings history, the ALJ found she had engaged in substantial gainful activity in 2015, when she made $16,084.10

---

[1] The parties have consented to my jurisdiction under 28 U.S.C. § 636(c).

working as a driver and detailer for a car rental company. (R. 37) But because there was "a continuous 12-month period during which the claimant did not engage in substantial gainful activity," the ALJ continued through the sequential analysis to "address the period the claimant did not engage in substantial gainful activity." (*Id.*)

Plaintiff, her 23-year-old daughter, and her 9-year-old son were evicted from their apartment, and at the time of the hearing, they were living with Plaintiff's sister. (R. 63-64) Plaintiff's daughter helped take care of her, and her sister drove her places. Plaintiff is five feet four inches tall and weighs 270 pounds. When Plaintiff was 14 years old, she suffered a gunshot wound to her stomach. (R. 58, 67) She did not seek therapy then and suffers from PTSD as an adult based on that incident. (R. 67) Plaintiff alleges disability due to PTSD, panic attacks, schizophrenia, and bipolar disorder. She says she quit working because "I would get paranoia and scared to leave my home. So, my supervisor fired me." (R. 59) Plaintiff was fired as a warehouse worker and a kitchen manager because she would just leave without clocking out. She "wanted to go home. . . . I couldn't breathe. I started having – hyperventilating, hearing voices. And hearing voices – you know, in my head. Hearing my baby cry. And I just left and went home." (R. 75)

She testified she is "never alone, I can't be by myself." (R. 62) In fact, she is so scared to leave the house that there are gaps in her medical treatment because she felt too afraid to go to her appointments. (R. 65) Plaintiff has no friends and spends her time drawing with her son, reading her Bible, watching the news, and hanging out with her adult daughter. (R. 62) She testified that she spends her day "[w]ondering how I'm going to get through the day." (R. 61) She was Baker Acted in June 2017, due to auditory hallucinations of babies crying and gunshots. (R. 66) In her words, "I'm scared of getting shot, something is going to happen to me, I'm not going to return back home." (R. 67)

2

After a hearing, the ALJ found Plaintiff has the severe impairments of "back pain, hypertension, obesity, an anxiety disorder, a schizoaffective disorder, and a post-traumatic stress disorder (PTSD)." (R. 37) Aided by the testimony of a VE, the ALJ determined Plaintiff is not disabled as she has the RFC to perform light work. (R. 40) Specifically, the ALJ found:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she needs to avoid ladders or unprotected heights; needs to avoid the operation of heavy, moving machinery; needs a low-stress work environment, meaning no production line; needs simple tasks; needs to avoid contact with the public; can occasionally bend, crouch, kneel, stoop, squat, or crawl; and needs a mono-cane for ambulation.

(R. 40) The ALJ found that, with this RFC, Plaintiff is unable to perform her past relevant work but is able to work as a marker, router, document preparer, addresser, and cutter and paster. (R. 46)

Plaintiff submitted additional evidence to the AC after the ALJ's February 27, 2018, decision: a letter from mental health provider Chrysalis Health dated July 11, 2018, and treatment records from Chrysalis Health dated July 17-24, 2018. (R. 8-25) The AC incorporated the additional evidence into the administrative record yet denied Plaintiff's request for review. Plaintiff, having exhausted her administrative remedies, filed this action.

Meanwhile, on December 6, 2018, she also filed new applications for SSI and DIB. The Commissioner granted these applications and awarded Plaintiff benefits as of the amended onset date of February 28, 2018, the day after the ALJ's decision in this case. Plaintiff attaches the Commissioner's favorable decision to her brief "to support Ms. Ward's claim that there was a probability of a different outcome had the case been remanded by the AC." (Doc. 19 at 3, fn. 1).

    *B. Standard of Review*

To be entitled to DIB and/or SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits her ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must decide if the claimant can do other work in the national economy in view of her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a

4

reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

### C. Discussion

Plaintiff argues the ALJ failed to develop the medical record and formulated an improper RFC, and the AC erred in denying review of her claim.

#### 1. Full and fair record

Plaintiff's first argument is multi-pronged: the ALJ failed to fully develop the record regarding her physical impairments; the ALJ should have consulted a medical expert to resolve an alleged conflict in her mental impairment diagnoses; and the ALJ erred in not subpoenaing records from Chrysalis Health that Plaintiff tried in vain to get on her own. The Commissioner maintains that the ALJ fulfilled his duty and that his decision is supported by substantial evidence.

The ALJ has a basic duty to develop a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2005). In determining whether the ALJ abided this duty, courts consider whether the record reveals evidentiary gaps that result in unfairness or clear prejudice. *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997). But the claimant "bears the burden of proving [s]he is disabled, and, consequently, [s]he is responsible for producing evidence to support [her] claim." *Id*. Here, the ALJ fulfilled his duty to develop the record of Plaintiff's physical impairments. As Plaintiff points out, her record of treatment for her physical impairments stops on March 4, 2015,

5

when she went to a follow-up appointment at Dunn Avenue Family Practice, her primary care provider.[2] Yet Plaintiff's hearing before the ALJ was in January 2018, almost three years later. Although Plaintiff argues this creates an evidentiary gap the ALJ was duty-bound to address, Plaintiff filed for disability based on her mental impairments only, not her physical ones. (R. 298)

Plaintiff did not allege any physical impairments in her benefits application or in any of the subsequent agency reports. (R. 298, 332, 348) At her hearing Plaintiff did not testify about her physical conditions (other than she cannot sweep or mop "because of my back," R. 61), and her attorney did not question her about any. (R. 64-68) An ALJ "is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability." *Street v. Barnhart*, 133 F. App'x 621, 627 (11th Cir. 2005) (citation and quotation omitted) (foreclosing plaintiff's argument that the ALJ failed to make findings about her mental impairments, because plaintiff did not allege any as the basis for disability either in his application for benefits or at his hearing). Despite this, the ALJ reviewed all of Plaintiff's treatment notes in the record and included hypertension, obesity, and back pain among Plaintiff's severe impairments, and the ALJ limited Plaintiff to light work. Plaintiff's contention that the ALJ should have developed the record more fully regarding her physical impairments fails.

Plaintiff also contends there are conflicting medical records regarding her mental health diagnoses and treatment that the ALJ should have resolved by consulting a medical expert. This argument also fails. Citing *Washington v. Commissioner of Social Security*, 906 F.3d 1353 (11th Cir. 2018), Plaintiff says the ALJ must identify and resolve any apparent conflict in the record. Her reliance on *Washington* is misplaced, however. In that decision, the Eleventh Circuit

---

[2] However, Kayla Fazio, D.O. of Dunn Avenue Family Practice completed a form at the request of Career Source of Northeast Florida on August 29, 2017, checking boxes indicating Plaintiff is permanently disabled due to schizophrenia and PTSD. (R. 551-54)

discussed the ALJ's duty to identify and resolve conflicts between the Dictionary of Occupational Titles and VE testimony; it did not address the ALJ's duty to identify alleged conflicts in the medical records. *Id.*

Although the ALJ must resolve conflicts in the evidence, he is not required to obtain medical expert testimony every time doctors disagree. *See Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007). Plaintiff does not explain why the allegedly conflicting medical opinions she identifies – her mental health treatment providers' varying diagnoses of PTSD, bipolar, schizophrenia, and panic disorder – undermine the ALJ's substantial evidence. Indeed, the ALJ "*may* ask for and consider the opinion of a medical . . . expert concerning whether . . . [a claimant's] impairment(s) could reasonably be expected to produce [his or her] alleged symptoms." 20 C.F.R. § 404.1529(b) (emphasis added) (addressing how agency evaluates pain and other symptoms). But the ALJ is not *required* to order an additional medical opinion where, as here, the record contains enough evidence for the ALJ to make a disability determination. *See Ingram,* 496 F.3d at 1269 (citing *Doughty v. Apfel,* 245 F.3d 1274, 1281 (11th Cir. 2001)).

The ALJ also neglected his duty to develop the record (according to Plaintiff) by failing to subpoena her mental health records from Chrysalis Health. Plaintiff contends the ALJ was required to grant her subpoena request pursuant to the agency's Hearing, Appeals, and Litigation Law Manual (HALLEX), specifically sections I-2-6-59 and I-2-5-78. https://www.ssa.gov/OP_Home/hallex.html. The Commissioner contends that Plaintiff's subpoena request was untimely, and Plaintiff did not demonstrate she actively and diligently sought the medical records.

Under the regulations, a claimant who wishes to subpoena documents must file with the ALJ a written request "at least 10 business days before the hearing date." *See* 20 C.F.R. §§

7

404.950(d)(2), 416.1450(d)(2). If the claimant misses this deadline, "the ALJ may deny the request at his or her discretion, unless the circumstances in 20 C.F.R. §§ 404.935(b) and 416.1435(b) apply. The ALJ will follow the procedures in HALLEX I-2-6-59(B)" to determine if the circumstances described in those regulations are met. HALLEX 1-2-5-78. Specifically, HALLEX 1-2-6-59(B) states: "[A]n ALJ will find that the circumstances in 20 CFR 404.935(b) and 416.1435(b) apply when a claimant does not timely submit the evidence because: . . . some other *unusual, unexpected, or unavoidable circumstances* beyond the claimant's control prevented him or her from submitting the evidence earlier." *Id*. (emphasis added). Examples of unusual, unexpected, or avoidable circumstances include when "a claimant, or appointed representative, *actively and diligently* sought evidence from a source and the evidence was not received or was received less than five business days prior to the start of the hearing." *Id*. (emphasis added).

Here, on January 24, 2018 (six days before Plaintiff's hearing), Plaintiff's attorney wrote Linda Gray, the ALJ's assistant at the Office of Hearing Operations, informing her that she had "just received" Plaintiff's "assessment and treatment plan," which were already in the record, but that Chrysalis Health would not release the progress notes from Plaintiff's appointments without a subpoena. (R. 384) So Plaintiff asked the ALJ to subpoena her records. (*Id*.) At the hearing the next week, the ALJ did not discuss Plaintiff's subpoena request, and neither Plaintiff nor her attorney brought it up. In his written decision, however, the ALJ stated:

> The undersigned denies the claimant's request to subpoena treatment records from her medical providers (Exhibit 17E). This request was dated January 24, 2018, which was less than 10 days prior to her hearing, held on January 30, 2018. See HALLEX 1-2-5-78. The undersigned finds that the circumstances in 20 CFR 404.935(b) and 416.1435(b) do not apply.

(R. 34) The ALJ offered no further explanation. Plaintiff appealed to the AC, contending the ALJ "abused his discretion when he refused to subpoena" the records and that "such glaring gaps in the

8

record create prejudice and unfairness, which creates a due process violation that requires remand." (R. 1) The AC, "[a]fter reviewing the entire record, including the hearing recording," determined that the ALJ did not abuse his discretion. (*Id.*)

To begin, the Eleventh Circuit has not decided whether HALLEX creates judicially enforceable rights. *See McCabe v. Comm'r of Soc. Sec.*, 661 F. App'x 596, 599 (11th Cir. 2016); *George v. Astrue*, 338 F. App'x 803, 804-05 (11th Cir. 2009). And even if HALLEX does carry the force of law – a "very big assumption," *George*, 338 F. App'x at 805 – remand is required only if the ALJ violates HALLEX procedures and only if the violation prejudices the claimant. *McCabe*, 661 F. App'x at 599 (even if HALLEX binding, mere showing that agency violated HALLEX not enough for remand, plaintiff must show prejudice); *Cohan v. Comm'r of Soc. Sec.*, No. 6:10-cv-719-Orl-35DAB, 2011 WL 3319608, at *5 (M.D. Fla. July 29, 2011) (same). A note appended to HALLEX 1-2-6-59 states:

> The ALJ will not develop or require evidence that shows that the claimant or appointed representative has actively and diligently sought evidence. However, when the claimant or representative shows that he or she made a good faith effort to timely request, obtain, and submit evidence, but he or she did not receive the records at least five business days before the date of the scheduled hearing because of circumstances outside of his or her control, the ALJ will find that the claimant has actively and diligently sought evidence.

*Id*. As the Commissioner points out, Plaintiff's letter is a bare-bones request for a subpoena and does not describe her good faith efforts to obtain the Chrysalis Health records on time; the ALJ did not abuse his discretion in denying the subpoena request.

Additionally, even assuming (without deciding) that HALLEX carries the force of law *and* that the ALJ violated it, Plaintiff has not shown she was prejudiced by the ALJ's failure to subpoena the records. *See McCabe*, 661 F. App'x at 599. Plaintiff's August 2017 treatment plan and assessment from Lajosha Miller, LMHC at Chrysalis Health, are in the record, yet the progress

notes that follow are missing. (R. 537-45) Plaintiff does not explain how these notes would have changed the ALJ's decision, beyond speculating that they would have (doc. 19 at 17). Ms. Miller confirmed Plaintiff's diagnosis of schizophrenia and recommended she undergo outpatient mental health counseling once a week for six months.[3] (R. 537-45)

In his decision, the ALJ emphasized that most of Plaintiff's appointments for mental health treatment were in 2015, "which was during the period when the claimant was engaging in [substantial gainful activity]." (R. 42) Also, "there is no evidence that she sought mental health treatment in 2016 or the first half of 2017." (R. 43) In July 2017, Plaintiff told a social worker at PSI Behavioral Health, LLC that she her symptoms had worsened because she had been without her medication for two years, but since restarting her medication, "she has not experienced any flashbacks, A/V hallucinations, obsessive thought patterns, or paranoia." (R. 489) In August 2017, Plaintiff said she was "stable when on meds." (R. 487) The ALJ acknowledged this, stating that in July 2017, Plaintiff "voluntarily Baker Acted herself at MHRC due to worsening symptoms; however, she stated that she had not had any flashbacks, auditory or visual hallucinations, obsessive thought patterns, or paranoia since resuming her medications." (R. 43)

The ALJ observed that "[t]here is no evidence of the claimant's Baker Act admission in the record." (*Id.*) Addressing the Chrysalis Health records, he stated: "In August 2017, the claimant sought care at Chrysalis Health for complaints of visual hallucinations, paranoia, and social isolation, but she stated that she was not taking any medications." (*Id.*) On this record, Plaintiff has not shown that the ALJ's alleged violation of HALLEX prejudiced her. *See Boros v. Comm'r of Soc. Sec.*, No. 2:17-cv-189-FtM-CM, 2018 WL 4561369, at *10 (M.D. Fla. Sept. 24,

---

[3] It is not clear that Plaintiff followed through on this recommendation. In the July 2018 Chrysalis Health records, which I discuss in the last section of this Order, Plaintiff's therapist reported her comment that "[i]t has been a while since I had a therapist." (R. 8)

10

2018). To the extent she relies on the Commissioner's award of benefits related to her later-filed applications to show prejudice, this is unavailing. As discussed in more detail in the final section of this Order, "the mere existence of a later favorable decision . . . does not undermine the validity of another ALJ's earlier unfavorable decision or the factfindings upon which it was premised." *Hunter v. Comm'r of Soc. Sec.*, 808 F.3d 818, 822 (11th Cir. 2015). Plaintiff's argument fails.

2. RFC

Plaintiff's next argument is that the ALJ's RFC determination is not supported by substantial evidence. A claimant's RFC is the most work she can do despite any limitations caused by her impairments. 20 C.F.R. § 404.1545(a)(1). In formulating a claimant's RFC, the ALJ must consider all impairments and the extent to which these impairments are consistent with medical evidence. 20 C.F.R. § 416.1545(a)(2), (e). An ALJ may not arbitrarily reject or ignore uncontroverted medical evidence. *McCruter v. Bowen,* 791 F.2d 1544, 1548 (11th Cir. 1986) (administrative review must be of the entire record; accordingly, ALJ cannot point to evidence that supports the decision but disregard other contrary evidence). A claimant's RFC is a formulation reserved for the ALJ, who, of course, must support his findings with substantial evidence. *See* 20 C.F.R. § 404.1546(c).

First, Plaintiff claims the ALJ should have included limitations related to her carpal tunnel syndrome and foot and ankle problems in her RFC. This is meritless. The ALJ reviewed Plaintiff's primary care records. (R. 387-419, 446-66) They list carpal tunnel syndrome and foot and ankle pain as "active problems," (R. 393) yet none suggests work-related limitations related to these impairments. The record does not contain treatment notes for any physical impairments after 2015 (as discussed in the previous section). Plaintiff did not testify she has limitations from these

impairments. Additionally, the ALJ limited Plaintiff to light work that accommodates her need for a cane, and no treating source opined Plaintiff was further limited in walking or standing.

Second, Plaintiff states the ALJ erred at step two by classifying her mental disorder as schizoaffective disorder rather than schizophrenia (doc. 19 at 17). (*See* R. 37) The ALJ's error is harmless. Step two requires only that the ALJ determine whether Plaintiff suffers from at least one severe impairment. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (holding "the finding of any severe impairment . . . whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe" is enough to satisfy step two). The ALJ found Plaintiff suffers from severe impairments and proceeded to the next steps in the analysis. (R. 37) Additionally, schizoaffective disorder and schizophrenia share overlapping symptoms, and both fall under the broader classification in the DSM-V of schizophrenia spectrum disorders. Plaintiff does not explain how the ALJ's error prejudiced her.

Changing tack, Plaintiff's final contention under this heading is that the ALJ erred in evaluating her mental impairments at steps two and three of the sequential evaluation process. This is a different analysis than the RFC analysis. When an ALJ evaluates a claimant's mental impairments at steps two and three, he employs a special technique (called the Psychiatric Review Technique, or PRT) to assess the claimant's functional limitations in four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. 20 C.F.R. §404.1520a(c)(3). *See Moore v. Barnhart*, 405 F.3d 1208, 1213-14 (11th Cir. 2005). The ALJ incorporates the results of the PRT into his findings and conclusions at steps four and five of the sequential evaluation process. *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013). But the PRT is separate from the ALJ's evaluation of a claimant's RFC, which is an assessment of a claimant's maximum ability to

do work despite her impairments. The mental RFC is a more detailed assessment of the claimant's ability to function. *Winschel*, 631 F.3d at 1180. In other words, an ALJ must be more thorough in evaluating a claimant's RFC at step four than in assessing the severity of mental impairments at steps two and three. *Id.*

Plaintiff does not flesh out her argument about the ALJ's consideration of her mental impairments, and I decline to do this for her. The ALJ employed the PRT and found that Plaintiff has moderate limitations in her ability to understand, remember, and apply information; interact with others; concentrate, persist, and maintain pace; and adapt and manage oneself. (R 38-39) The ALJ considered each of the four areas of mental functioning based on the relevant evidence available to him and found at step two that Plaintiff has the severe impairments of anxiety disorder, schizoaffective disorder, and PTSD. (R. 37)

Plaintiff argues the ALJ incorrectly assessed her ability to understand, remember, or apply information, because "the record is replete with statements from Ms. Ward and her therapists about forgetting to take her medication. Her noncompliance was not intentional but a symptom of her impairment." (Doc. 19 at 18). But the ALJ acknowledged Plaintiff's history of non-compliance with her medication and treatment plan: in June 2015, PSI Behavioral Health discharged her as a patient based on her non-compliance and refusal to participate in therapy. The ALJ noted that Plaintiff attributed her non-compliance to her mental health symptoms but that her symptoms subsided when she complied. I am not permitted to reweigh the evidence or substitute my own judgment for that of the ALJ even if I find the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). As for the other errors Plaintiff highlights, I agree with the Commissioner that they are non-prejudicial scrivener's errors. In addition, the ALJ considered Plaintiff's impairments in combination and made the step three

13

finding that Plaintiff did not have an impairment or combination of impairments that meets a listing.

The ALJ incorporated his PRT into his findings at steps four and five. His analysis of Plaintiff's mental impairments starts when her primary care provider first prescribed her Prozac for depression in September 2014. Plaintiff later reported it worked well for her depression and panic disorder, then, in late 2014, reported the PTSD symptoms of hypervigilance, obsessive thoughts, and paranoia, which she attributed to the trauma of being shot when she was 14. She was prescribed Seroquel and Invega (a once monthly injection to treat schizophrenia). The ALJ discusses the fact that Plaintiff told her therapist in January 2015 that she had been experiencing auditory hallucinations for a few months triggered by an abortion she had in July 2014. But she had denied hallucinations at November and December 2014 appointments.

The ALJ emphasized that, throughout 2015, a time when Plaintiff sometimes reported experiencing hallucinations and sometimes denied them, she had engaged in substantial gainful activity. In other words, whatever symptoms she was having did not prevent her from working. Also, it is undisputed that Plaintiff did not seek mental health treatment in 2016 and the first half of 2017. The ALJ acknowledged Plaintiff was Baker Acted in June 2017, when she was off her medication, but her symptoms subsided once she started taking it again. The ALJ's consideration of Plaintiff's mental impairments is supported by substantial evidence.

### 3. *Appeals Council's consideration of new and material evidence*

The final issue is whether the AC properly reviewed Plaintiff's additional mental health treatment records from Chrysalis Health, dated July 2018, approximately four and a half months after the ALJ's decision. The AC incorporated these records into the administrative record yet denied review of the ALJ's decision. Plaintiff contends the Chrysalis Health records relate back

to the period at issue, because "this is a reassessment of a current patient; it is a continuation of the treatment showing the diagnosis of agoraphobia with panic attacks as an updated diagnosis." (Doc. 19 at 22). The Commissioner argues that the additional evidence is not chronologically relevant because it post-dates the ALJ's decision and, in any event, it does not render the ALJ's decision unsupported by substantial evidence.

In the Eleventh Circuit, reviewing courts consider any new, material, and chronologically relevant evidence a plaintiff submits to the AC, along with the rest of the record, to determine if substantial evidence supports the ALJ's decision:

> If a claimant submits new noncumulative and material evidence to the AC after the ALJ's decision, the AC shall consider such evidence, but only where it relates to the period on or before the date of the ALJ's hearing decision. 20 C.F.R. § 404.970(b). "Material" evidence is evidence that is "relevant and probative so that there is a reasonable possibility that it would change the administrative result." *Milano v. Bowen*, 809 F.2d 763 (11th Cir. 1987). When evidence is submitted for the first time to the AC, that new evidence becomes part of the administrative record. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1067 (11th Cir. 1994). The AC considers the entire evidence, including the new, material, and chronologically relevant evidence, and will review the ALJ's decision if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. §404.970(b). "We review whether the new evidence renders the denial of benefits erroneous." *Ingram v. Comm. of Social Sec. Admin*, 496 F.3d 1253, 1262 (11th Cir. 2007).

*Smith v. Soc. Sec. Admin.*, 272 F. App'x 789, 800-01 (11th Cir. 2008) (*per curiam*). In other words, a claimant seeking remand under sentence four of 42 U.S.C. § 405(g) "must show, in light of the new evidence submitted to the Appeals Council, the ALJ's decision to deny benefits is not supported by substantial evidence in the record as a whole." *Timmons v. Comm'r of Soc. Sec.*, 522 F. App'x 897, 902 (11th Cir. 2013).

Here, the AC stated, "[t]he [ALJ] decided your case through February 27, 2018. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before February 27, 2018." (R. 2) The AC did

15

not explain why the new evidence did not provide a basis to change the ALJ's decision, just that it "does not relate" to the relevant time period. (*Id*.) The AC is required to consider new evidence, but it is not required to explain its decision when denying review. *See* 20 C.F.R. §§ 416.1467, 416.1470; *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) ("because a reviewing court must evaluate the claimant's evidence anew, the AC is not required to provide a thorough explanation when denying review").

Evidence may be chronologically relevant even if it post-dates the ALJ's decision. For instance, in *Washington v. Commissioner of Social Security Administration*, 806 F.3d 1317, 1322 (11th Cir. 2015), the Eleventh Circuit considered an examining psychologist's opinions to be chronologically relevant "even though [the psychologist] examined [the claimant approximately seven] months after the ALJ's decision." The psychologist had reviewed the claimant's treatment records from the period before the ALJ's decision; the claimant had told the psychologist he had suffered from the conditions "throughout his life" (which obviously included the relevant time period); and there was "no assertion or evidence" that the claimant's condition worsened "in the period following the ALJ's decision." *Id*.; *see also Wordsman v. Berryhill*, 2019 WL 1349821, at *4-5 (M.D. Fla. Mar. 26, 2019) (remanding to the Commissioner for reconsideration of evidence submitted to the AC for the first time; evidence that post-dated relevant period by four months).

On the other hand, in *Stone v. Commissioner of Social Security Administration*, 658 F. App'x 551, 555 (11th Cir. 2016), the Eleventh Circuit found the circumstances "significantly different" from those present in *Washington*. The records in *Stone* "demonstrate[d] a worsening" of the relevant symptoms after the ALJ's decision. *Id*. And in *Hargress v. Commissioner of Social Security Administration*, 883 F.3d 1302, 1309-10 (11th Cir. 2018), the Eleventh Circuit found that progress notes post-dating the ALJ's decision did not "relate to the period before the ALJ's . . .

16

decision" and "nothing in these new medical records indicates the doctors considered [the claimant's] past medical records or that the information in them relates to the period at issue, which materially distinguishes this case from *Washington*." *Id.*; *see also Smith*, 272 F. App'x at 801-02 (affirming district court's decision; new evidence submitted to AC did "not establish a likelihood that the ALJ would have reached a different result," in part because they post-dated the ALJ's decision by between four and eight months).

I find this case more like *Stone* and *Hargress* and less like *Washington*. Stephanie Figueroa-Guzman, a licensed clinical social worker (LCSW), evaluated Plaintiff in Plaintiff's apartment on July 17, 2018 – over four months after the ALJ's decision. Ms. Figueroa-Guzman noted Plaintiff received inpatient mental health treatment in July 2017 (this is consistent with Plaintiff's testimony that she was Baker Acted mid-2017), but had no history of outpatient mental health treatment. (R. 9) Plaintiff admitted, "[i]t has been a while since I had a therapist." (R. 8) She relayed that she has mood swings, panic attacks, and is fearful of being alone. She described a recurring nightmare where she's running behind her sister and someone is trying to shoot her. And "client reports she's had abortions in the past and when she was off her medication in the past she used to hear babies crying." (R. 8)

Ms. Figueroa-Guzman found Plaintiff is "experiencing severe, debilitating anxiety and avoidance of public places. The fear causes clinically significant distress and impairment in client's social life." (R. 8) Ms. Figueroa-Guzman diagnosed Plaintiff with PTSD and agoraphobia, diagnoses Plaintiff takes pains to characterize as "updated." Ms. Figueroa-Guzman did not state whether she had reviewed Plaintiff's previous mental health treatment records before formulating her opinion. Under these circumstances – where Plaintiff's additional evidence pertains to treatment obtained months after the ALJ's decision, there is no evidence Ms. Figueroa-Guzman

was supplementing a prior treatment record or even reviewed prior treatment records – the ALJ did not err in finding the records do not relate to the time period at issue.[4]

The analysis could stop here, as Plaintiff must show that the new evidence is both temporally relevant *and* material (*i.e.*, that there is a reasonable possibility the new evidence would have changed the administrative outcome). Nonetheless, I address Plaintiff's argument that the Chrysalis Health treatment records *must* be material, because the Commissioner approved Plaintiff's second application for benefits, finding she has been disabled since February 28, 2018, just *one day after the* ALJ's decision in this case. "The only additional evidence included in that claim was the Chrysalis assessment of July 17, 2018." (Doc. 19 at 22).

"[A] later award of benefits does not legally impact the review of a prior application for benefits." *Stokes v. Astrue*, No. 8:08-cv-1657-T-23HTS, 2009 WL 2216785, at *2 (M.D. Fla. July 23, 2009) (citation and quotations omitted). The Commissioner's decision to grant Plaintiff's second application is not in the administrative record but is attached to Plaintiff's brief. In it, the Commissioner found Plaintiff disabled as of February 28, 2018, a later time period than that at issue in the ALJ's decision here. This new award "is not evidence of the plaintiff's condition on or before the date of the ALJ's decision." *Id.*, quoting *Howard v. Astrue*, No. 07-144-GWU, 2008 WL 108776, at *1 (E.D. Ky. Jan. 9, 2008). Of course, Plaintiff did not "suddenly become disabled the day after the ALJ's decision." *Howard*, 2008 WL 108776, at *1. But "the subsequent award of benefits says nothing about the plaintiff's condition during the entire period being considered under the plaintiff's current application." *Id.* In other words, an award of benefits recognizing disability beginning one date does not compel a result for the earlier period at issue here. *Stokes*,

---

[4] Additionally, licensed clinical social workers are not "acceptable medical sources" under the regulations, and their opinions are not afforded the same weight as physicians, psychologists, and other medical professionals. *See* SSR 06-03p (applicable to claims filed before March 27, 2017).

2009 WL 2216785, at *2 (summarizing various approaches of the effect of a subsequent disability determination on a prior application and finding "it is clear the mere fact of an award of benefits" does not compel a finding of disability for an earlier time period); *see also Miller v. Colvin*, No. 3:13-cv-391-J-JRK, 2014 WL 4794692, at *6 (M.D. Fla. Sept. 25, 2014) ("The fact that Plaintiff was subsequently awarded benefits for the day after the period at issue here is of no moment.").

Indeed, in denying Plaintiff's claim in this case, the ALJ stated that most of Plaintiff's appointments for mental health treatment were in 2015, "which was during the period when the claimant was engaging in [substantial gainful activity]." (R. 42) Also, "there is no evidence that she sought mental health treatment in 2016 or the first half of 2017." (R. 43) As the ALJ noted, in July 2017, Plaintiff "voluntarily Baker Acted herself at MHRC due to worsening symptoms; however, she stated that she had not had any flashbacks, auditory or visual hallucinations, obsessive thought patterns, or paranoia since resuming her medications." (*Id.*) Plaintiff has not explained how her July 2018 records from Chrysalis Health pull the substantial evidence rug out from under the ALJ's decision. Her argument fails.

*D. Conclusion*

For the reasons stated above, it is ORDERED:

(1) The Commissioner's decision is AFFIRMED; and

(2) The Clerk of Court is directed to enter judgment for the Defendant and close the case.

DONE and ORDERED in Tampa, Florida on October 15, 2019.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE